```
                                                    FILED
                                              U.S. DISTRICT COURT
             UNITED STATES DISTRICT COURT    EVANSVILLE DIVISION
              SOUTHERN DISTRICT OF INDIANA   2012 MAY 30  PM 5:07
                    EVANSVILLE DIVISION
                                              SOUTHERN DISTRICT
                                                 OF INDIANA
                                              LAURA A. BRIGGS
```

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) 3:12-cr-14 RLY-WGH | |
| v. | ) CAUSE NO. 3:12-cr-   RLY-WGH- | |
| HERMION TORRES, | ) | -01 |
| aka "Bear," "Oso," | ) | |
| CHRISTOPHER BAKER, | ) | -02 |
| DAVID LANE, | ) | -03 |
| REGINA COMPTON, | ) | -04 |
| Defendants. | ) | |

**INDICTMENT**

**COUNT ONE**

[Drug Conspiracy, 21 U.S.C. §846]

The Grand Jury charges that:

Beginning on a date unknown to the Grand Jury, but at least as early as 2009, and continuing up to and through present, in the Southern District of Indiana, Evansville Division, and elsewhere, HERMION TORRES, aka "Bear," and "Oso" (hereinafter "TORRES"), defendant, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute 1,000 kilograms or more of marijuana, a Schedule I Non-Narcotic Controlled Substance, in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substance, and in excess of 5 kilograms of cocaine, a Schedule II Narcotic Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), (vii) and (viii).

## MANNER AND MEANS

1.      During the course of the charged conspiracy, TORRES acted as an organizer and leader of a marijuana, methamphetamine and cocaine distribution organization operating throughout Southern Indiana, Western Kentucky and elsewhere. TORRES procured quantities of marijuana, methamphetamine and cocaine from sources in Texas and Mexico, both known and unknown to the Grand Jury, for re-distribution. Marijuana, methamphetamine and cocaine procured by TORRES was brought to Indiana from Texas and Mexico.

2.      TORRES, distributed quantities of marijuana, methamphetamine and cocaine to customers and drug distribution associates both known and unknown to the Grand Jury in Southern Indiana. These customers and drug distribution associates, in turn, distributed quantities of marijuana, methamphetamine and cocaine received from TORRES to lower level members of the conspiracy known and unknown to the Grand Jury, in Southern Indiana, Western Kentucky and elsewhere.

3.      Members of the conspiracy used telephones to facilitate the marijuana, methamphetamine and cocaine trafficking activities as outlined above. During the course of the conspiracy, members spoke on telephones, at times using code language, to discuss matters relative to their drug trafficking operations.

4.      The defendant and other members of the conspiracy used motor vehicles, including commercial tractor trailers and personal automobiles to transport marijuana, methamphetamine, cocaine and United States currency constituting the proceeds from the sale of drugs, from, between and within Southern Indiana, Kentucky, Texas and Mexico.

5.      Members of the conspiracy, including TORRES, at times possessed firearms in connection with their drug trafficking activities. Firearms were possessed by members of the

conspiracy to protect themselves, their stores of drugs and United States currency. TORRES and other members of the conspiracy also used firearms as a commodity, trading them for marijuana, methamphetamine and cocaine. TORRES and others engaged in the illegal purchase and trafficking of firearms from Indiana to Mexico, as alleged in Count Two of this Indictment. The allegations contained in Count Two of this indictment are realleged here, as though fully set forth.

6.  TORRES and other members of the conspiracy distributed quantities of marijuana, methamphetamine and cocaine on consignment, often referred to as "fronting." When TORRES and other members of the conspiracy fronted drugs to other members and customers of the conspiracy, they provided the drugs without payment, but with the expectation that they would be paid after the receiving individual, in turn, distributed the drugs and collected payment.

## OVERT ACTS

In furtherance of said conspiracy and to effect the objects thereof, TORRES and other members of the conspiracy did commit, among others, the following overt acts:

1.  In 2010, an individual known to the Grand Jury (hereinafter "Individual 1") began receiving quantities of marijuana and cocaine from TORRES in Southern Indiana, which Individual 1 distributed to other persons known to the Grand Jury. Individual 1, on approximately five (5) occasions, traveled to Texas at the direction of TORRES to inspect shipments of marijuana from Mexico. TORRES enlisted the assistance of a second individual known to the Grand Jury (hereinafter "Individual 2") to, at times, deliver marijuana and cocaine to Individual 1 in Southern Indiana.

2. On or about November 30, 2010, TORRES and Individual 1 arranged to procure a quantity of marijuana from a source unknown to the Grand Jury. The marijuana was arranged to be brought from Mexico, via Texas, to Southern Indiana. The marijuana was concealed within a legitimate load of materials in a commercial tractor trailer. On or about December 10, 2010, the tractor trailer, carrying approximately six hundred fifty pounds (650 lbs.) of marijuana, crossed the international border between Mexico and the United States of America, in Laredo, Texas. TORRES and Individual 1 intended to distribute the marijuana in question to members of the conspiracy known and unknown to the Grand Jury in Southern Indiana and Kentucky.

3. On or about February 7, 2011, TORRES distributed approximately one pound (1 lb.) of methamphetamine to Individual 1 in Southern Indiana. TORRES directed Individual 2 to deliver the methamphetamine to Individual 1. TORRES "fronted" the methamphetamine to Individual 1. Individual 1, in turn, distributed the methamphetamine to another member of the conspiracy in Kentucky. Thereafter, on or about February 10, 2011, Individual 1 met with TORRES in Southern Indiana and paid him United States currency for the previously fronted methamphetamine.

4. In 2010, an individual known to the Grand Jury (hereinafter "Individual 3") began transporting quantities of marijuana and cocaine on behalf of TORRES between Texas and Southern Indiana. In March, 2010, Individual 3 transported cocaine for Torres from Texas to Southern Indiana. The cocaine in question was concealed in false automobile batteries.

5. In April, 2010, Individual 3 received on behalf of TORRES a quantity of marijuana in Texas from an unknown individual, and at the direction of TORRES transported the marijuana to Southern Indiana for subsequent distribution.

6. In or around March, 2011, TORRES possessed with intent to distribute approximately twelve pounds (12 lbs) of methamphetamine and distributed in excess of five and one half pounds (5 ½ lbs.) of methamphetamine to an individual known to the Grand Jury (hereinafter "Individual 4"). TORRES "fronted" the methamphetamine to Individual 4. The methamphetamine in question was concealed in a false automobile battery. Individual 4, in turn, distributed some of the methamphetamine to persons known and unknown to the Grand Jury in the Columbus, Indiana, area.

7. On or about May 22, 2012, TORRES met with Individual 4 and another individual known to the Grand Jury (hereinafter "Individual 5"), in Columbus, Indiana. During the meeting, Individual 4 introduced Individual 5 to TORRES. Thereafter, they discussed trading firearms provided by Individual 5 for methamphetamine provided by TORRES. During the meeting, TORRES, Individual 4 and Individual 5 discussed providing a portion of the methamphetamine previously provided by TORRES to Individual 4 (referenced in paragraph 6 herein) to Individual 5 in payment for a Barrett rifle.

8. On or about May 23, 2012, TORRES and Individual 4 engaged in a telephone conversation, wherein they discussed trading methamphetamine for firearms provided by Individual 5.

9. Overt Acts 1 through 8, inclusive, as alleged in Count Two of this Indictment are re-alleged as though fully set forth herein.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

[Firearms Trafficking Conspiracy, 18 U.S.C. §371]

The Grand Jury further charges that:

Beginning on a date unknown to the Grand Jury, but at least as early as 2010, and continuing through the present, in the Southern District of Indiana, New Albany Division, and elsewhere, HERMION TORRES, aka "Bear," and "Oso" (hereinafter "TORRES"), defendant, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to make materially false statements in connection with the acquisition of firearms, in violation of Title 18, United States Code, Section 922(a)(6).

## MANNER AND MEANS

1. TORRES, a resident of Seymour, Indiana, was formerly a resident of Texas.

2. *Elmore's Firearms & Accessories* firearms store is located in Greenwood, Indiana. *Elmore's Firearms & Accessories* is a federally licensed firearms dealer.

3. *Plainfield Shooting Supplies* firearms store is located in Plainfield, Indiana. *Plainfield Shooting Supplies* is a federally licensed firearms dealer.

4. *TSG* firearms store is located in Indianapolis, Indiana. *TSG* is a federally licensed firearms dealer.

5. *Don's Guns* firearms store is located in Indianapolis, Indiana. *Don's Guns* is a federally licensed firearms dealer.

6. TORRES was convicted on or about September 26, 1996, of the offense of felony possession of marijuana, in the state court of Carroll County, Indiana, Cause Number 08D01-9608-DF-51, a felony offense punishable by imprisonment for a term exceeding one

year. At all times relevant to the time frame alleged in Count Two, TORRES, was prohibited by federal law from receiving or possessing firearms.

7.      TORRES enlisted other persons known to the Grand Jury to "straw purchase" firearms on his behalf. A straw purchase occurs when the true purchaser of a firearm, who is ineligible to lawfully purchase the firearm, solicits a middleman to conduct the transaction and make the necessary statements related to the purchase in the middleman's name. The middleman, in fact, purchases the firearm for the true purchaser. The straw purchasers agreed with TORRES to act as straw purchasers of firearms at various stores and locations in Greenwood, Plainfield and Indianapolis, Indiana. TORRES was prohibited from lawfully purchasing the firearms himself due to his prior criminal conviction, as outlined in paragraph 6 herein.

8.      TORRES, in turn, agreed to provide the straw purchasers with quantities of controlled substances or United States currency in exchange for their agreement to make the straw firearms purchases on his behalf.

9.      Following the straw purchases, TORRES arranged for the purchased firearms to be transported to members of the "Gulf Cartel" in Texas and Mexico. The "Gulf Cartel," also known as the "Cartel Del Golfo," and the "C.D.G.," is an international criminal organization responsible for armed violent drug trafficking and other criminal activities in Mexico and the United States. Members of the "Gulf Cartel" and persons acting on its behalf are known to be heavily armed, and to use firearms in connection with their criminal activities. Armed criminal activities routinely engaged in by the "Gulf Cartel" include narcotics trafficking, kidnapping, murder, robbery and extortion.

10. The straw firearms purchases conducted at the direction of TORRES occurred from *Elmore's Firearms & Accessories*, *Plainfield Shooting Supplies*, *TSG*, *Don's Guns* and other firearms dealers known and unknown to the Grand Jury.

11. In order to complete the straw purchases, the straw purchasers knowingly made false and fictitious oral and written statements likely to deceive the federally licensed firearms dealers involved with respect to material facts as to the lawfulness of the sales of the firearms. The straw purchasers stated in writing on Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Forms 4473, that they were "the actual buyer of the firearm(s)" listed on the completed Forms 4473. The Forms 4473 contained a written warning with respect to the requirement, stating, "**Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person.**" The straw purchasers represented orally and in writing that they were the actual buyers of the firearms in question, when in fact, and as they knew, they were not the actual buyers of the firearms.

12. TORRES traded straw purchased firearms for controlled substances, which he distributed in the Southern District of Indiana and elsewhere, as outlined herein in Count One of the Indictment.

## OVERT ACTS

In furtherance of said conspiracy and to effect the objects thereof, TORRES and other members of the conspiracy did commit, among others, the following overt acts:

1. Overt Acts 1 through 8, inclusive, as alleged in Count One of this Indictment are re-alleged as though fully set forth herein.

2.  On or about August 4, 2010, Individual 3 straw purchased an A-15 rifle, serial no. F088374X from *Don's Guns*, in Indianapolis, Indiana, for TORRES. Individual 3 transported the assault rifle and several other firearms to Texas at the direction of TORRES.

3.  On or about August 7, 2010, an individual known to the Grand Jury (hereinafter "Individual 6") straw purchased a Barrett rifle from *Elmore's Guns*, in Greenwood, Indiana, on behalf of TORRES.

4.  From August through October, 2010, Individual 6 straw purchased approximately 29 assault rifles and 10 rifles from *TSG*, in Indianapolis, Indiana, on behalf of TORRES. The firearms straw purchased were as follows:

|     | Date | Weapon | Serial Number |
| --- | --- | --- | --- |
| a.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1964CD5021 |
| b.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1965IJ0711 |
| c.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1967AE3708 |
| d.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1967AI1879 |
| e.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1970CT4261 |
| f.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1971CP3554 |
| g.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1973ET4291 |
| h.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1982S-AN1245 |
| i.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1982S-AO4835 |
| j.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1985PO2030 |
| k   | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1965HI1040 |
| l.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1967AD2675 |
| m.  | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1967AH3026 |

| | | | |
|---|---|---|---|
| n. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1967AM3546 |
| o. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1970CT46011 |
| p. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1973ES3511 |
| q. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1974FH2934 |
| r. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1982S-AO3954 |
| s. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1984S-BA4807 |
| t. | 08/26/10 | Century Arms, Model WASR 10, assault rifle | 1988-ACV3845 |
| u. | 09/22/10 | Browning, Model Book Mark, rifle | 515ZM07677 |
| v. | 09/24/10 | Bushmaster, Model BA50, rifle | BM00678 |
| w. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1982SA0243 |
| x. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1982SA03721 |
| y. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1983NK1106 |
| z. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1984PF4986 |
| aa. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1982SAN0115 |
| bb. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1982SAP0094 |
| cc. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1983NM5591 |
| dd. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1983NR2379 |
| ee. | 09/24/10 | Romanian Arms, Model AK 47, assault rifle | 1984PF6191 |
| ff. | 10/15/10 | Henry, Model Golden Boy, rifle | BB0017790C |
| gg. | 10/15/10 | Bushmaster, Model BA 50, rifle | BM00956 |
| hh. | 10/15/10 | Bushmaster, Model BA 50, rifle | BM00948 |
| ii. | 10/15/10 | Barrett, Model 82A1, rifle | 25180 |
| jj. | 10/21/10 | Bushmaster, Model BA 50, rifle | BM01036 |

| kk. | 10/22/10 | Bushmaster, Model BA 50, rifle | BA00907 |
| ll. | 10/29/10 | Barrett, Model 82A1, rifle | 25137 |
| mm. | 10/30/10 | Barrett, Model 82A1, rifle | 25185 |

During the same time period, Individual 6 also purchased approximately 1,000 rounds of .50 caliber ammunition from *TSG* for TORRES. TORRES paid Individual 6, on average, $100.00 United States currency for each assault rifle straw purchased, and $500.00 for each rifle straw purchased. TORRES directed Individual 6 to provide the firearms to Individual 3 to be transported to Texas, and ultimately Mexico.

5.   On March 16, 2011, law enforcement officers near Fronton, Texas, recovered a duffel bag on the bank of the Rio Grande river. The bag contained 10 assault rifles, several rifle magazines and over 200 rounds of ammunition. Among the assault rifles was the Romanian Arms rifle, serial number 1983-NK-1106, referenced in sub-paragraph y of paragraph 4 herein. Also contained within the bag was an improvised explosive device, made from two hand grenades. The firearms, magazines, ammunition and improvised explosive device were intended to be transported from Texas to Mexico, for use in further criminal activity. The Romanian Arms assault rifle referenced in sub-paragraph ee of paragraph 4 herein was recovered by law enforcement officers in Poblado Los Guerra, Mexico, on February 13, 2011.

6.   In the Summer of 2010, TORRES purchased a Barrett .50 caliber rifle, serial number 24533, from an individual known to the Grand Jury (hereinafter "Individual 7") in Noblesville, Indiana. Individual 3 accompanied TORRES to Individual 7's residence where TORRES took possession of the rifle. TORRES subsequently transferred the rifle to Individual 3 for delivery to Texas. On or about December 16, 2010, members of the Gulf Cartel possessed the Barrett rifle, serial number 24533, other firearms, grenades and ammunition, in the vicinity

of Anahuac, Tamaulipas, Mexico, in connection with the kidnapping of two persons from Valle Hermoso, Mexico.

7.    In January, 2011, TORRES enlisted Individual 4 to conduct the straw purchase of two Barrett .50 caliber rifles on his behalf. Thereafter, on or about February 11, 2011, Individual 4 and a second individual known to the Grand Jury (hereinafter "Individual 8") straw purchased a Barrett .50 caliber rifle, serial number 14116, from *Elmore's Firearms & Accessories*, in Greenwood, Indiana, for TORRES. On February 12, 2011, Individual 4 and Individual 8 straw purchased a second Barrett .50 caliber rifle, serial number 0787, from *Plainfield Shooting Supplies*, in Plainfield, Indiana, for TORRES. TORRES paid Individual 4 and Individual 8 $16,450.00 United States currency in payment for the straw purchases. On or about February 27, 2011, TORRES directed Individual 4 and Individual 8 to provide the Barrett rifles to another individual. Individual 4 and Individual 8 met with the other individual and provided him with both rifles. On or about March 9, 2011, the Barrett rifles were transported to Texas, to be provided to an individual working for the Gulf Cartel, in Dallas, Texas.

8.    On or about March 4, 2012, TORRES and Individual 4 had a conversation concerning Individual 4 converting assault rifles into fully automatic machine guns for TORRES.

All of which is in violation of Title 18, United States Code, Section 371.

### COUNT THREE

[Felon in Possession of a Firearm - 18 U.S.C. §922(g)(1)]

The Grand Jury further charges that:

In the Summer of 2010, in the Southern District of Indiana, Indianapolis Division, HERMION TORRES, aka "Bear," and "Oso," defendant, did knowingly possess in and affecting

commerce, a firearm, to wit: a Barrett .50 caliber rifle, serial number 24533, after having been convicted on or about September 26, 1996, of the offense of felony possession of marijuana, in the state court of Carroll County, Indiana, Cause Number 08D01-9608-DF-51, a felony offense punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Section 922(g)(1).

## COUNT FOUR

[Firearm Straw Purchase - 18 U.S.C. §922(a)(6)]

The Grand Jury further charges that,

On or about September 24, 2010, in the Southern District of Indiana, Indianapolis Division, CHRISTOPHER BAKER and HERMION TORRES, aka "Bear," and "Oso," defendants, in connection with the acquisition of firearms, specifically two Romarm, Model GP WASR assault rifles, serial numbers 1984-PF-6191 and 1983-NK-1106, from *TSG* in Indianapolis, Indiana, a federally licensed dealer in firearms, knowingly made false and fictitious oral and written statements likely to deceive such dealer with respect to a material fact as to the lawfulness of the sale of the firearm, in that CHRISTOPHER BAKER stated on a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, that he was the actual buyer of the firearm indicated on the 4473 Form, when in fact CHRISTOPHER BAKER then knew he was not the actual buyer of the firearm, all of which is a violation of Title 18, United States Code, Sections 2 and 922(a)(6).

## COUNT FIVE

[Firearm Straw Purchase - 18 U.S.C. §922(a)(6)]

The Grand Jury further charges that,

On or about February 11, 2011, in the Southern District of Indiana, Indianapolis Division, DAVID LANE, REGINA COMPTON and HERMION TORRES, aka "Bear," and "Oso," defendants, in connection with the acquisition of a firearm, specifically a Barrett .50 caliber rifle, serial number 14116, from *Elmore's Firearms & Accessories* in Greenwood, Indiana, a federally licensed dealer in firearms, knowingly made false and fictitious oral and written statements likely to deceive such dealer with respect to a material fact as to the lawfulness of the sale of the firearm, in that REGINA COMPTON stated on a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, that she was the actual buyer of the firearm indicated on the 4473 Form, when in fact REGINA COMPTON then knew she was not the actual buyer of the firearm, all of which is a violation of Title 18, United States Code, Sections 2 and 922(a)(6).

## COUNT SIX

[Firearm Straw Purchase - 18 U.S.C. §922(a)(6)]

The Grand Jury further charges that,

On or about February 12, 2011, in the Southern District of Indiana, Indianapolis Division, DAVID LANE, REGINA COMPTON and HERMION TORRES, aka "Bear," and "Oso," defendants, in connection with the acquisition of a firearm, specifically a Barrett .50 caliber rifle, serial number 0787, from *Plainfield Shooting Supplies* in Plainfield, Indiana, a federally licensed dealer in firearms, knowingly made false and fictitious oral and written statements likely to deceive such dealer with respect to a material fact as to the lawfulness of the

sale of the firearm, in that REGINA COMPTON stated on a Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives Form 4473, that she was the actual buyer of the firearm indicated on the 4473 Form, when in fact REGINA COMPTON then knew she was not the actual buyer of the firearm, all of which is a violation of Title 18, United States Code, Sections 2 and 922(a)(6).

## COUNT SEVEN

[Possession of Methamphetamine With the Intent to Distribute - 21 U.S.C. §841]

On or about May 22, 2012, within the Southern District of Indiana, Indianapolis Division, DAVID LANE, defendant, did knowingly possess with the intent to distribute in excess of 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II Non-Narcotic Controlled Substances, in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A).

## FORFEITURE

The allegations in Counts One through Seven of the Indictment are re-alleged as if fully set forth herein, for the purpose of alleging forfeiture pursuant to Title 21, United States Code, Section 853, and Title 18, United States Code, Section 924 and Title 28, United States Code, Section 2461(c).

If convicted of any of the offenses set forth in Counts One and Seven, HERMION TORRES, CHRISTOPHER BAKER, DAVID LANE and REGINA COMPTON, defendants, shall forfeit to the United States any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of any of the offenses set forth in Counts One through Seven of the indictment of which they are convicted, and any and all property used

or intended to be used in any manner or part to commit and to facilitate the commission of the offenses set forth in Counts One through Seven of the indictment of which they are convicted.

Pursuant to Title 21, United States Code, Section 853(p), the court shall order the forfeiture of any other property of the defendants, up to the value of any property described in paragraph 2, if, by any act or omission of the defendants, the property described in paragraph 2, or any portion thereof:

      a.    cannot be located upon the exercise of due diligence,

      b.    has been transferred or sold to, or deposited with, a third party,

      c.    has been placed beyond the jurisdiction of the court,

      d.    has been substantially diminished in value, or

      e.    has been commingled with other property which cannot be divided

without difficulty.

In keeping with the foregoing, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of all forfeitable property as described above in Paragraph 2.

If convicted of any of the offenses set forth in the indictment, HERMION TORRES, CHRISTOPHER BAKER, DAVID LANE and REGINA COMPTON, defendants, shall also forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearm or ammunition involved in or used in any of the offenses set forth in the indictment of which they are convicted.

A TRUE BILL:

_____
FOREPERSON


JOSEPH H. HOGSETT
United States Attorney

By: _____
Matthew P. Brookman
Assistant United States Attorney